UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BOARD OF EDUCATION OF FREDERICK
COUNTY, MARYLAND,
    *Plaintiff-Appellee,*

   v.

JD, III; JID, JR.; EVD, as Parents
and Next Friends of JD, III,
    *Defendants-Appellants.*

No. 99-2180

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-98-3611-Y)

Argued: September 25, 2000

Decided: October 26, 2000

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Michael Jeffrey Eig, EIG, PARKER & STARBUCK,
Washington, D.C., for Appellants. Andrew Wayne Nussbaum,
KNIGHT, MANZI, NUSSBAUM & LAPLACA, P.A., Upper Marl-
boro, Maryland, for Appellee. **ON BRIEF:** Julie A. Starbuck, EIG,
PARKER & STARBUCK, Washington, D.C., for Appellants.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In this special education case, a child and his parents appeal a district court's order reversing an ALJ's order granting reimbursement for the cost of his private schooling. We affirm.

### I.

J.D. began ninth grade at Catoctin High School in Frederick County, Maryland in September 1994. During that school year, although J.D. enrolled in honors classes and passed all his courses, he earned lackluster grades. He also developed a record of behavioral problems, including disruptive classroom behavior, disrespectful comments to teachers, and fighting. His doctor diagnosed J.D. as suffering from Attention Deficit Hyperactivity Disorder (ADHD) and prescribed medication, which school authorities administered to J.D. during the school day. Sometime during that year, J.D. also began smoking marijuana.

At the beginning of his tenth grade year, J.D. physically attacked his therapist. Thereafter he was hospitalized at one psychiatric hospital for six days and took part in an intensive out-patient program at another for four weeks. Psychiatrists and psychologists variously diagnosed J.D. as suffering from ADHD, bipolar disorder, obsessive compulsive disorder, and cannabis abuse. From November through April of his tenth grade year, J.D. took part in a drug program and did very well in his honors courses receiving an award, given to only two students at Catoctin, for the most improved students in the Frederick County schools. But in May, J.D. again began using drugs and engaging in aggressive, defiant behavior; his grades deteriorated, although he again passed all of his honors courses.

J.D.'s parents testified that they had many conversations with Catoctin officials during his ninth and tenth grade years in which they

expressed concern about J.D.'s behavior and academic performance. In these meetings, J.D.'s parents told Catoctin officials that J.D. was involved with marijuana, but never shared J.D.'s other medical diagnoses. J.D.'s father testified that he told Catoctin officials that J.D.'s drug usage was significant but that J.D. also had separate and distinct emotional problems, which were interrelated. He further testified that, at the end of J.D.'s tenth grade year, he asked Catoctin for help in identifying the source of J.D.'s problems, although he never specifically requested that J.D. be evaluated for an educational disability. Catoctin officials did not recall this conversation; in any event, they never evaluated J.D. for an educational disability.

After a summer in which J.D. was arrested for assaulting three police officers, he began his eleventh grade year at Catoctin. He was often a truant and on September 19, he was again hospitalized at a psychiatric hospital. Doctors there noted that he acknowledged daily marijuana use and that his parents "discussed their desire to place him in a therapeutic boarding school." Frustrated by J.D's deteriorating academics and behavior, J.D.'s parents unilaterally removed him from Catoctin and enrolled him at the Grove School, a therapeutic school in Connecticut. In addition to regular educational classes, Grove's program treated J.D.'s emotional problems. Grove does not offer drug treatment. However, when J.D. used inhalants and marijuana at Grove, officials there suggested that he enroll in a special residential drug treatment program in Utah. J.D. did so and returned to Grove in "good shape," although he did have some relapses, again using inhalants and marijuana. J.D's behavior improved during his year at Grove, and he re-enrolled for his 12th grade year at Catoctin.

In November 1997, J.D. and his parents requested a due process hearing under the Individuals with Disabilities Education Act (IDEA). They alleged their request for assistance with J.D.'s emotional problems should have led Catoctin to determine his eligibility for special education services under the IDEA and that Catoctin's failure to make this eligibility determination denied J.D. the free appropriate public education to which he was entitled under the IDEA. A Maryland administrative law judge found that the failure of Catoctin officials to identify J.D. as disabled before his placement at Grove procedurally violated the IDEA. The ALJ particularly noted that J.D. demonstrated negative behavioral changes and academic decline, and that J.D. had

been hospitalized for psychiatric problems. The ALJ found that, given Catoctin officials' procedural violation of the IDEA, it would be "fundamentally unfair" to require proof that J.D. was disabled under the IDEA in order for his parents to be entitled to reimbursement for his tuition at Grove. Concluding that Grove constituted an appropriate placement for J.D. under the terms of the statute, the ALJ held that his parents were entitled to reimbursement from the school system for the year's tuition at Grove.

The school system appealed the ALJ's reimbursement order to the district court, which found that the ALJ erred by finding that a procedural violation of the IDEA, without more, can result in a duty to reimburse a student's parents the cost of placing that student in a private school. Moreover, relying upon J.D.'s history of drug involvement, the district court held J.D.'s behavior sprang not from an educational disability but rather from social maladjustment. Accordingly, the district court found J.D. not disabled under the IDEA, and granted summary judgment to the school district.

## II.

We have reviewed the record, briefs, and applicable law, and considered the oral arguments of the parties, and we are persuaded that the district court reached the correct result. We therefore affirm on the reasoning of the district court. *See Board of Educ. v. J.D., III*, Civ. A. No. Y-98-3611 (D. Md. July 30, 1999).

*AFFIRMED*